UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
MIDOIL USA LLC,
                       Petitioner,          Case No. 12-cv-8484 (PAC)

  -against-

ASTRA PROJECT FINANCE PTY LTD.,

                       Respondent.
------------------------------------------------------------------ X

**MEMORANDUM IN OPPOSITION TO RESPONDENT'S EMERGENCY
MOTION TO STAY ARBITRATION AND COMPEL JUDICIAL REVIEW**

 

MORGAN, LEWIS & BOCKIUS LLP
John Dellaportas
101 Park Avenue
New York, New York 10178
Telephone: 212-309-6000
Facsimile: 212-309-6001

DUANE MORRIS LLP
Rachael G. Pontikes
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone: 773-677-6757
Facsimile: 312-277-6903

*Attorneys for Petitioner*
*MidOil USA LLC*

-i-

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.      Astra Project's Claim Of Fraud In The
Inducement Is A Matter For The Arbitrator To Decide....................................................... 2

II.     This Court Has Jurisdiction Over Astra Project ................................................................ 7

CONCLUSION............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,*
170 F.3d 349 (2d Cir. 1999) ............................................................................................................8

*Atlanta Shipping Corp. v. Cheswick-Flanders,*
463 F.Supp. 614 (S.D.N.Y. 1978) ................................................................................................10

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ............................................................................................................3, 4, 5, 6

*Campaniello Imps., Ltd. v. Saporiti Italia*,
117 F.3d 655 (2d Cir. 1997) .....................................................................................................3, 5, 6

*Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba,*
243 F.2d 342 (2d Cir. 1957) ..........................................................................................................10

*First Options v. Kaplan*,
514 U.S. 938 (1995) ........................................................................................................................7

*Glencore Ltd. v. Degussa Engineered Carbons L.P.*,
848 F. Supp. 2d 410 (S.D.N.Y. 2012) .............................................................................................3

*Arbitration between Intercarbon Bermuda Ltd. and Caltex Trading and Transp. Corp.*,
146 F.R.D. 64 (S.D.N.Y. 1993) ..................................................................................................9, 10

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
2011 WL 3806255 (S.D.N.Y. Aug. 24, 2011) ........................................................................3, 5, 6, 7

*Lucent Techs., Inc. v. Tatung Co.*,
2003 WL 402539 (S.D.N.Y. 2003) ...............................................................................................10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*,
553 F.2d 842 (2d Cir. 1977) ..................................................................................................8, 9, 10

*Orion Shipping & Trading Co. v. V.E. States Petroleum Corp. of Panama, S.A.,*
284 F.2d 419 (2d Cir. 1960) ..........................................................................................................10

*Philipp Bros. Div. of Englehard Minerals & Chem. Corp. v. El Salto S.A.*,
487 F. Supp. 91 (S.D.N.Y 1980) ....................................................................................................8

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ............................................................................................................... passim

*Victory Transp., Inc. v. Comisaria General de Abastecimientos y Transportes*,
336 F.2d 354 (2d Cir. 1964) ............................................................................................................9

*Washington v. William Morris Endeavor Entm't, LLC*,
    2011 WL 3251504 (S.D.N.Y. July 20, 2011) ........................................................................3

Petitioner MidOil USA, LLC ("MidOil") respectfully submits this memorandum of law in opposition to the emergency motion to stay arbitration and compel judicial review submitted by Respondent Astra Project Finance Pty Ltd. ("Astra Project") ("Resp. Mot.").

## PRELIMINARY STATEMENT

In January 2012, MidOil and Astra Project executed a Corporate Financing Agreement (the "CFA") to finance certain programs in the area of oil trading.  This CFA contains a very broad arbitration clause which requires that all disputes be resolved by the American Arbitration Association ("AAA") in New York City.  The CFA further provides that the provisions of the agreement shall be binding on the parties' affiliates.

In February 2012, Astra Project and its parent, Astra Resources PLC ("Astra Resources," and together with Astra Project, "Astra"), reneged on their obligations under the CFA, costing MidOil $25 million.  For the better part of the last year, MidOil has been trying to arbitrate this dispute in compliance with the CFA, only to be frustrated by various legal maneuvers through three different courts.  The instant motion is the latest such maneuver.  By it, Astra Project seeks to stay the arbitration MidOil has brought until this Court can conduct a "judicial review" of its claim that it was fraudulently induced into entering into the CFA.

The entirety of the support for its fraudulent inducement claim consists of a single sentence in the accompanying declaration of Jaydeep Biswas. (Doc. No. 31.)  In it, Ms. Biswas declares that:

> upon a full, diligent, complete and accurate investigation conducted by me Jaydeep Biswas and Astra's directors, of the Petitioners MidOil USA, LLC, Vincent Crandon (a/k/a Vincent J. Ceccola) and Christine Crandon, it was discovered by me and Astra directors that the Petitioners, upon information and belief, fraudulently induced me Jaydeep Biswas and Astra Project to enter . . . [the CFA], as well as the inserted arbitration clause provision 23.1, dated, 1/11/2012.

*Id.* at ¶ 4.  No detail or other explanation is provided.

It has been settled law for almost half a century, dating back to *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, that this sort of fraudulent inducement claim is a contractual matter to be decided by the arbitrator, not the Court. 388 U.S. 395, 404 (1967). In its motion, Astra Project now asks this Court to reject decades of unbroken precedent, and adopt Justice Black's <u>dissent</u> in *Prima Paint.* MidOil submits that Astra Project has offered no basis in its motion for such an extraordinary result. Accordingly, its motion for an emergency stay should be denied, and MidOil's petition to compel arbitration should be granted.[1]

As a fall-back, Astra Project also argues that this Court lacks personal jurisdiction because service of the Petition was not proper under the Hague Convention. As set forth below, Hague Convention service is not required to compel arbitration of a party to an arbitration agreement and, in any event, Hague Convention service has been undertaken. Therefore, this ground fails as well, and the arbitration should be allowed to proceed.

## ARGUMENT

### I. Astra Project's Claim Of Fraud In The Inducement Is A Matter For The Arbitrator To Decide

Astra Project claims that MidOil "fraudulently induced [Astra Project] to enter the (CFA)[2] as well as the Arbitration provision 23 of the CFA . . . ." Resp. Mot. at ¶ 2. As noted above, the instant motion contains nothing more than a single conclusory statement lacking in specificity or documentary support. Specifically, with regard to the CFA's arbitration clause, Astra Project argues that because the whole contract was fraudulently induced, the arbitration clause likewise was fraudulently induced. *See, e.g.,* Resp. Mot. at ¶ 8.

---

[1]  MidOil seeks to amend its petition to add Astra Resources as an additional respondent. *See* July 11, 2013 Ltr. to Court and Doc. Nos. 17-20.

[2]  A true and correct copy of the CFA is annexed as Exhibit A to the accompanying declaration of John Dellaportas ("Dell. Decl.").

2

To avail itself of this Court's review, however, a party to an arbitration agreement must allege a fraud specifically directed to the agreement to arbitrate itself.  *See, e.g., Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006); *Prima Paint*, 388 U.S. at 404; *Campaniello Imps., Ltd. v. Saporiti Italia*, 117 F.3d 655, 667 (2d Cir. 1997); *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 420-21 (S.D.N.Y. 2012); *Ipcon Collections LLC v. Costco Wholesale Corp.*, 2011 WL 3806255, at *3 (S.D.N.Y. Aug. 24, 2011); *Washington v. William Morris Endeavor Entm't, LLC*, 2011 WL 3251504, at *4 (S.D.N.Y. July 20, 2011).  As Astra Project has failed to allege with any particularity a specific fraud surrounding the arbitration provision, its fraudulent inducement claim is for the arbitrator to decide.

In the seminal Supreme Court case on this issue, *Prima Paint v. Flood & Conklin Mfg. Co.*, plaintiff Prima Paint purchased a manufacturing business from defendant Flood & Conklin. 388 U.S. at 397.  The parties executed a consulting agreement whereby defendant was to furnish business advice to the plaintiff for a period of six years.  *Id.*  The agreement contained a broad arbitration clause requiring any claim or controversy arising out of it to be settled by arbitration under the rules of the American Arbitration Association.  *Id.* at 398.  Thereafter, Prima Paint learned of the defendant's insolvency, refused to make the payments due under the contract, and subsequently filed a lawsuit seeking to rescind the consulting agreement, alleging fraudulent inducement by the defendant regarding defendant's finances.  *Id.*

For its analysis, the Supreme Court first looked at the Federal Arbitration Act (the "FAA") and determined that the agreement in question was a contract evidencing a transaction involving commerce, and thus a "valid, irrevocable, and enforceable" written provision for arbitration under Section 2 of the FAA.  *Prima Paint*, 388 U.S. at 400-01.  The Court then turned

to the question of "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court" or by the arbitrators. *Id.* at 402. The Supreme Court held that under Section 4 of the FAA, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate," and therefore a claim of fraud in the inducement of a contract in its entirety is a question for arbitrators to decide when that contract contains a broad arbitration clause, such as one which refers any and all disputes to arbitration. *Id.* at 404. As the Supreme Court explained, "arbitration clauses as a matter of federal law are separable from the contract in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." *Id.* at 402 (quotations omitted).

In 2006, the Supreme Court reconfirmed the foregoing in the case of *Buckeye Check Cashing, Inc. v. Cardegna,* stating that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." 546 U.S. at 449. In *Buckeye*, a class of borrowers brought a lawsuit in Florida state court against lender Buckeye Check Cashing alleging it made illegal loans. Buckeye Check Cashing moved to compel arbitration based on an arbitration clause contained in the deferred deposit and disclosure agreements signed by each of the borrowers. *Id.* at 442. The Court synthesized three key principles in its decision to grant Buckeye Check Cashing's motion to compel: "[f]irst, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts." *Id.* at 445-46. The Supreme Court dismissed the respondents' argument that "since an agreement void *ab initio* under state law is not a contract, there is no written

4

provision in or controversy arising out of a contract, to which § 2 [of the FAA] can apply." *Id.* at 447 (quotations omitted). The Supreme Court concluded that *Prima Paint* resolved this issue in favor of the separate enforceability of arbitration provisions and that respondents' reading would create an implausible solution. *Id.* at 448-49.

In reviewing this issue, the Second Circuit has proffered that "there must be some substantial relationship between the fraud or misrepresentation and the arbitration clause in particular in order to protect the obvious distinction drawn in *Prima Paint* between the arbitrability of fraud relating to the contract generally and fraud in the inducement of the arbitration clause in particular." *Campaniello*, 117 F.3d at 667. As such, conclusory allegations surrounding fraud in agreeing to arbitrate are insufficient to avail plaintiffs of federal or state court jurisdiction. *Id.* at 667-68 (finding allegation of fraud with respect to arbitration clause insufficient when no facts are alleged that suggest that fraud was issue in its making). Consistent with the foregoing, Courts in this District have scrupulously applied the principles set forth in *Prima Paint* and *Buckeye* that even if a contract will later be proved void, the issue of voidability is one reserved exclusively for the arbitrator.

In *Ipcon Collections LLC v. Costco Wholesale Corp.*, for example, the plaintiff alleged that the defendant fraudulently induced the plaintiff into entering into the contract because the defendant "hid its true intention not to adhere to the terms of the agreements." *Ipcon*, 2011 WL 3806255, at *2. The contract contained a broad arbitration clause. The plaintiff sought to avoid arbitration by asking the Court review the claim. The Court declined, holding that *Prima Paint* leaves fraud in the inducement claims to the arbitrator unless "the parties disagree over whether they agreed to arbitrate specifically." *Id.* at *3. As there was no such allegation in *Ipcon*, the Court denied the motion to stay the arbitration. *Id.* at *5.

5

The foregoing case law is squarely on point.  Astra Project does not claim that it did not agree to arbitrate.  Rather, as in *Ipcon*, its arguments regarding the agreement to arbitrate are limited to vague assertions of fraud in the inducement as to the contract as a whole.  *See, e.g.,* Resp. Mot. ¶¶ 1-4, 8, 14, 25, 40-43.  It then argues, as did the respondents in *Buckeye,* that the contract here, the CFA, includes the arbitration provision and therefore fraud in the inducement of the contract necessarily implicates the arbitration provision.  *See, e.g.,* Resp. Mot. ¶¶ 3, 8.  Specifically, Astra Project asserts that the agreement and the arbitration clause are void *ab initio*.  Resp. Mot. ¶¶ 8, 14, 25 & 43.  As the Court in *Buckeye* made clear, this argument fails because it would render the Supreme Court's severability principle in *Prima Paint* implausibly moot, allowing for any party to an arbitration agreement to skirt the FAA merely by alleging, as Astra Project seeks to do here, that the fraud in the inducement of the contract extends to the arbitration clause therein.  546 U.S. at 448-49; *accord Campaniello*, 117 F.3d at 667-68.

In its motion, Astra Project cites no law to the contrary.  Instead, it relies exclusively on Justice Black's dissent in *Prima Paint*; in particular, on an argument that *Prima Paint* was wrongly decided and that this Court should instead follow Justice Black's dissent.  These parts of Astra Project's motion appear to be quoted verbatim, without accreditation, from two sources.  The discussion in paragraphs 9-13 of its motion appears to taken from an unsigned entry in the blog *Forward Movement*,[3] dated December 7, 2009, entitled "Contracts, Fraud & the Arbitration Clause*." (See* Dell. Decl. Exh. B.)  The discussion in paragraphs 15-24 of its motion, in turn, appears to be taken from a 2002 student note by Joshua Welsh, entitled "Has Expansion of the Federal Arbitration Act Gone Too Far?: Enforcing Arbitration Clauses in Void *Ab Initio*

---

[3]     *Forward Movement* describes itself, in part, as follows: "This general interest blawg is a collection of young professionals and their efforts to move their careers forward. Authors may be developing a side interest apart from their practice area, writing to enhance their name recognition, or searching for new employment."   *What We're Doing Here*, Forward Movement, available at http://ourforwardmovement.blogspot.com/2009/12/contracts-fraud-arbitration-clause.html (last visited July 15, 2013).

Contracts." 86 Marq. L. Rev. 581, 613-14 (2002); Dell. Decl. Exh. C.  While both of these critiques are well-meaning enough, neither is precedential for purposes of this motion.

Astra Project also relies on *First Options v. Kaplan* for the proposition that "a contract will be deemed void when there is a 'misrepresentation as to the character or essential terms of a proposed contract.'" Resp. Mot. at ¶¶ 15-16.  However, *First Options* is readily distinguishable from this case because the Court found that the plaintiffs did not sign the underlying agreement. *First Options v. Kaplan*, 514 U.S. 938, 947 (1995).  Here, Astra Project does not dispute that it signed the CFA.  Astra Project's claim that MidOil "did not intend to fulfill its obligations does not mean the contract[] [was] not signed; instead, it means there was fraud in the inducement. That issue is the appropriate province of the arbitrator." *Ipcon*, 2011 WL 3806255, at *4.

## II.   This Court Has Jurisdiction Over Astra Project.

Astra Project also asks this Court to dismiss MidOil's petition to compel arbitration claiming this Court lacks personal jurisdiction over both Astra Project and parent company Astra Resources.  Although not entirely clear from its papers, Astra Project seems to claim that this Court lacks jurisdiction over Astra Project because it has no minimum contacts with New York, and that both Astra Project and Astra Resources were not properly served as required under the Hague Convention.

The law does not support this argument.  Under well-established principles in this Circuit, Astra Project consented to the jurisdiction of this court when it agreed to arbitrate all disputes in New York.  Specifically, the CFA arbitration clause states:

> In the event of dispute concerning any aspect of this Agreement (including breach or alleged breach thereof) the PARTIES agree to have the dispute arbitrated and settled by binding arbitration in New York City under the most recent version of the Rules of the American Arbitration Association.

(Dell. Decl. Exh. A. at 7.)

When Astra Project agreed to arbitrate all disputes in New York, it consented to the jurisdiction of the New York courts. "It is well-settled that federal courts applying New York law have personal jurisdiction over parties that agree to arbitrate their disputes in New York." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 352 (2d Cir. 1999) (reversing the district court to find the non-parties bound to an arbitration agreement on an estoppel theory had consented to jurisdiction of the New York courts via the arbitration clause which required arbitration in New York); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977) (reversing district court to find a Greek national consented to jurisdiction of the New York courts by agreeing to resolve all disputes via arbitration in New York); *Philipp Bros. Div. of Englehard Minerals & Chem. Corp. v. El Salto S.A.*, 487 F. Supp. 91, 93 (S.D.N.Y. 1980) (finding "a contract clause requiring that disputes be arbitrated in New York constitute[s] a consent by each party to the jurisdiction of the courts within the state").

Astra Project's claim that it has no minimum contacts with the United States, New York or New Jersey, is irrelevant. New York courts do not need to apply the long-arm statute or the "doing business" test to defendants who agree to arbitrate in New York because this agreement is consent to the jurisdiction of the New York courts. In *Merrill Lynch*, the Court of Appeals found that: "we need not consider whether section 302 confers jurisdiction here because we believe that the jurisdictional argument based on Lecopulos's [Defendant] consent to arbitrate is determinative." 553 F.2d at 844. In a footnote, the Court noted that it need not consider the claim based on section 301 on these same grounds. *Id.* at 844 n.2. By agreeing to arbitrate all disputes in New York, Astra Project consented to the jurisdiction of this court.[4]

---

[4] This court also has jurisdiction over Astra Resources via the CFA's arbitration clause, as the CFA incorporates Astra Resources by reference. *See Am. Bureau of Shipping,* 170 F.3d at 352-53 (finding non-parties which were bound to arbitration agreement had consented to jurisdiction via arbitration clause).

8

Astra Project also argues that MidOil failed to comply with the Hague Convention requirements for service. For starters, MidOil did not have to serve Astra Resources with the initial petition—Astra Resources was not named as a party in it. To add Astra Resources, MidOil seeks leave to amend its petition, as Astra Resources is incorporated into the CFA by reference and is the alter ego of Astra Project. But that request is pending before this Court, so MidOil is not yet obligated to formally serve Astra Resources with its petition.

As for Astra Project, MidOil was not obligated to serve its petition through the Hague Convention. Even when the respondent is foreign, once the parties have consented to a court's jurisdiction, "the sole function of process [is] . . . to notify the appellant that proceedings had commenced." *Victory Transp., Inc. v. Comisaria General de Abastecimientos y Transportes*, 336 F.2d 354, 364 (2d Cir. 1964); *Merrill Lynch,* 553 F.2d at 845. Imperfect service of process for a petition regarding arbitration is not fatal where both parties have consented to arbitrate in the District and notice is sufficient to apprise the opponent of the action being taken. *See Victory Transport*, 336 F.2d at 364; *Merrill Lynch,* 553 F.2d at 845; *Arbitration between Intercarbon Bermuda Ltd. and Caltex Trading and Transp. Corp.*, 146 F.R.D. 64, 71 (S.D.N.Y. 1993).

MidOil served Astra Project with the initial petition for arbitration by sending a copy of the petition to Astra Project's counsel by regular and certified mail with return receipt requested, and via messenger. *See* Exhibits A and B to the accompanying declaration of Rachael G. Pontikes ("Pontikes Decl."). There is no doubt Astra Project received this petition – it filed a timely response, with an affidavit from Jaydeep Biswas, its executive director. (*See* Doc. No. 8.)

The Second Circuit has found this type of service proper for a petition to compel arbitration where all parties have agreed to arbitrate in New York. In *Merrill Lynch*, Merrill Lynch served the New York attorneys of the respondent, a Greek national, with its motion

9

papers. 553 F.2d at 843-44.  The Second Circuit found this service proper because serving papers on this Greek resident's New York attorney gave the respondent actual notice, and so no unfairness resulted from the Court giving effect to notice actually received by the respondent. *Id.* at 845; *accord Intercarbon Bermuda Ltd.*, 146 F.R.D. at 71.

Registered mail has also been found as a sufficient means of giving a respondent fair notice that the petitioner has moved to compel arbitration in federal court.  *See, e.g., Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, S.A.,* 284 F.2d 419, 421 (2d Cir. 1960); *Atlanta Shipping Corp. v. Cheswick-Flanders,* 463 F.Supp. 614, 618 (S.D.N.Y. 1978); *Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba,* 243 F.2d 342, 348 n.12 (2d Cir. 1957); *Lucent Techs., Inc. v. Tatung Co.*, 2003 WL 402539, at *1 (S.D.N.Y. 2003).

In sum, by sending its petition to compel arbitration to Astra Project's counsel via mail, certified mail, and messenger, MidOil has adequately served Astra Project by providing Astra Project with fair notice.  Nevertheless, out of an abundance of caution, and to spare the Court the burden of resolving this issue, MidOil has recently caused the initial petition to be served on Astra Project under the Hague Convention.  (*See* Pontikes Decl. Exh. C.)

## CONCLUSION

For the foregoing reasons, Petitioner MidOil USA LLC respectfully requests that the Court deny Respondent Astra Project Finance Pty Ltd.'s motion and grant Petitioner's amended petition to compel arbitration against Respondent and its affiliate, Astra Resources PLC.

| | |
|---|---|
| Dated: New York, New York<br>July 15, 2013 | MORGAN, LEWIS & BOCKIUS LLP<br><br>*/s/ John Dellaportas*<br>John Dellaportas<br>101 Park Avenue<br>New York, NY 10178<br>Tel: 212-309-6000<br>jdellaportas@morganlewis.com<br><br>Rachael G. Pontikes<br>Duane Morris, LLP<br>190 South LaSalle Street, Suite 3700<br>Chicago, IL 60603<br>Tel: 773-677-6757<br>rgpontikes@duanemorris.com<br><br>*Attorneys for Petitioner*<br>*MidOil USA LLC* |