# Marquette Law Review

Volume 86
Issue 3 *Winter 2002*

Article 5

# Has Expansion of the Federal Arbitration Act Gone Too Far?: Enforcing Arbitration Clauses in Void Ab Initio Contracts

Joshua R. Welsh

Follow this and additional works at: http://scholarship.law.marquette.edu/mulr

 Part of the Law Commons

**Repository Citation**

Joshua R. Welsh, *Has Expansion of the Federal Arbitration Act Gone Too Far?: Enforcing Arbitration Clauses in Void Ab Initio Contracts*, 86 Marq. L. Rev. 581 (2002).
Available at: http://scholarship.law.marquette.edu/mulr/vol86/iss3/5

This Article is brought to you for free and open access by the Journals at Marquette Law Scholarly Commons. It has been accepted for inclusion in Marquette Law Review by an authorized administrator of Marquette Law Scholarly Commons. For more information, please contact megan.obrien@marquette.edu.

Case 1:12-cv-08484-PAC Document 35-3 Filed 07/15/13 Page 2 of 4

the contract.[95] According to the Court, "[w]hat states may not do is decide that a contract is fair enough to enforce all its basic terms . . . , but not fair enough to enforce its arbitration clause."[96] The Court went on to state that "courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions."[97] Whereas *Moses H. Cone* and *Southland* made it clear that states could not require specific claims to be resolved through litigation rather than arbitration, *Doctor's Associates* further specified that any attempt by a state to protect its citizens by singling out an arbitration clause from the rest of the contract would be preempted by the FAA.[98]

### D. A "Partial Restoration"[99] of State Power to Govern Contract Law

*Moses H. Cone*, *Southland*, and *Doctor's Associates* severely limited the states' long-time right to govern contract law, an essential area of the law when dealing with arbitration agreements.[100] At the same time, however, two Supreme Court cases served to lessen the harshness of the FAA's infringement into this essential state right, leading to confusion regarding just how much power states have retained in contract law relating to arbitration.

The first case, *Volt Information Sciences, Inc. v. Board of Trustees*,[101] confronted the issue left by *Prima Paint* of whether parties are free to agree to have state law govern their arbitration agreement.[102] In holding that parties are free to contract around the FAA, the Court cited *Bernhardt*, which stated that "the FAA does not 'reflect a congressional intent to occupy the entire field of arbitration' . . . . Congress's primary purpose was to make parties' arbitration agreements enforceable."[103]

---

95. *See* Kornegay, *supra* note 1, at 357 (citing *Doctor's Assocs.*, 517 U.S. at 686); *see also* Sternlight, *supra* note 5, at 667 (citing MONT. CODE ANN. § 27-5-114(4) (1993)).

96. Kornegay, *supra* note 1, at 357 n.187 (citing *Doctor's Assocs.*, 517 U.S. at 686).

97. *Id.* at 357 n.186 (citing *Doctor's Assocs.*, 517 U.S. at 687).

98. *See* Sternlight, *supra* note 5, at 667.

99. *See* Kornegay, *supra* note 1, at 355.

100. Essentially, without a contract, there can be no arbitration agreement. According to the AAA, "[t]he arbitrator's authority is created by the contract, subject to applicable arbitration law. In effect, the parties breathe life into [the] arbitrator." American Arbitration, *A Guide for Commercial Arbitrators*, available at http://www.adr.org/index2.1.jsp?JSPssid=15727&JSPsrc=upload\LIVESITE\Rules_Procedures\ADR_Guides\comguide.html ; *see also* discussion *infra* Part VI.A.2.

101. 489 U.S. 468 (1989).

102. Kornegay, *supra* note 1, at 353 (citing *Volt*, 489 U.S. 468).

103. *Id.* at 353–54 (citing *Volt*, 489 U.S. at 477 (noting that the primary purpose of the

Case 1:12-cv-08484-PAC Document 35-3 Filed 07/15/13 Page 3 of 4

arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[231] To determine the "grounds [that] ... exist at law or in equity for the revocation of any contract," courts necessarily need to turn to state contract laws.[232]

A close examination of the language of section 2 dictates that courts should defer to the states' right to determine when a contract is or is not void. This includes both situations where state common law principles render a contract void[233] and where a violation of a state statute dictates that the contract is void.[234]

As shown above, the payday loan industry is one area of the law in which it is necessary for states to exercise their power to govern contract law.[235] Any business that is extending loans at an annual interest rate of over 500% should be closely regulated by a state.[236] States have done this by requiring payday loan companies to be licensed as lenders.[237] It does not stand to reason, then, that unlicensed lenders can have their choice of jurisdiction honored merely because an arbitration clause was included in a nonexistent contract. Decisions in the Fifth and Sixth Circuits, however, allow for such absurd results.[238]

3. Where a Contract is Void, an Arbitrator Has no Jurisdiction

Several authorities stand for the proposition that an arbitrator's jurisdiction is grounded in the agreement between the parties.[239] According to the Supreme Court in *First Options*, arbitration "flow[s] inexorably from the fact that arbitration is simply a matter of contract between the parties."[240] The American Arbitration Association, for example, expressly states that "[t]he arbitrator's authority is created by

---

231. *See supra* note 26 and accompanying text.
232. *See* Kornegay, supra note 1, at 359 (noting that "[t]he FAA depends upon general law of contracts to provide its 'infrastructure'").
233. Typically, a contract will be deemed void when there is "a misrepresentation as to the character or essential terms of a proposed contract." RESTATEMENT (SECOND) OF CONTRACTS § 163 cmt. a (1981).
234. *See supra* Part V.C.
235. *See supra,* Part V.D.
236. *Id.*
237. *Id.*
238. Burden v. Check Into Cash, 267 F.3d 483 (6th Cir. 2001), *cert. denied,* 122 S. Ct. 1436 (2002); Lawrence v. Comprehensive Bus. Servs. Co., 833 F.2d 1159 (5th Cir. 1987).
239. *See infra* notes 240-46 and accompanying text.
240. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

the contract,... [i]n effect, the parties breathe life into [the] arbitrator."[241] Likewise, Justice Black, in his *Prima Paint* dissent, noted that when a contract is procured by fraud,[242] there is no contract and nothing can be arbitrated because sections 2 and 3 assume a valid contract.[243] These sections provide for the enforcement of the agreement only when a valid contract exists.[244] Further, according to the Ninth Circuit in *Three Valleys*, "because an 'arbitrator's jurisdiction is rooted in the agreement of the parties,' a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate. Only a court can make that decision."[245] Finally, the Eighth Circuit has noted that an arbitrator "has no independent source of jurisdiction apart from the consent of the parties."[246]

The expansion of the FAA has had dramatic consequences on the law of arbitration in the United States. Applying the enforcement provisions of the FAA to agreements that do not exist would be the most absurd and dramatic consequence to date. The aforementioned authorities demonstrate that an arbitrator's authority rests solely on a

---

241. *American Arbitration Association: A guide for Commercial Arbitrators*, *available at* http://www.adr.org/index2.1.jsp?JsPssid=15727&JSPsrc=upload/LIVESITE/Rules_Procedures/ADR_Guides/comguide.html.

242. Justice Black makes no distinction between fraud in the inducement and fraud in the factum. He extends the argument that this Comment is making, suggesting that any claim of fraud regarding the contract should be decided by a court before arbitration is compelled. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 412 (1967) (Black, J., dissenting). While theoretically correct, given the recent proliferation of arbitration contracts, this would lead to a tidal wave of parties claiming fraudulent inducement in an effort to avoid arbitration.

243. *Id.* at 413. To support this assertion, Justice Black turned to the legislative history surrounding the Act, noting that one senator, in hearings on the bill, observed that "[t]he court has got to hear and determine whether there is an agreement of arbitration, undoubtedly, and it is open to all defenses, equitable and legal, that would have existed at law...." *Id.*

244. *Id.* at 412–13.

245. Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1140 (9th Cir. 1991) (quoting George Day Constr. Co. v. United Bhd. of Carpenters, Local 354, 722 F.2d 1471, 1474 (9th Cir. 1984)). The court went on to state that applying *Prima Paint* to an allegation going to the *existence* of a contract would require it to take *Prima Paint* "one step further" to a situation that the "majority did not address." *Id.* at 1141 n.4.

246. I.S. Joseph Co. v. Michigan Sugar Co., 803 F.2d 396, 399 (8th Cir. 1986); *see also Three Valleys*, 925 F.2d 1136, 1140 (9th Cir. 1991) (quoting Smith Wilson Co. v. Trading & Dev. Establishment, 744 F. Supp. 14, 16 (D.D.C. 1990) ("arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration")).