UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIDOIL USA, LLC,

                Petitioner,

        v.

ASTRA PROJECT FINANCE PTY LTD.,

                Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 15, 2013

12 Civ. 8484 (PAC)(KNF)

**OPINION**

HONORABLE PAUL A. CROTTY, United States District Judge:

On November 20, 2012, MidOil USA, LLC ("MidOil") petitioned to compel arbitration

of a contract dispute with Astra Project Finance Pty Ltd. ("Astra Project"). Specifically, MidOil

claims that it is due $25,000,000 under a corporate financing agreement (the "CFA") executed

between the parties. On December 19, 2012, Astra Project moved to stay arbitration and instead

sought judicial review on the grounds that it was fraudulently induced into signing the CFA. On

June 5, 2013, MidOil moved for leave to amend its petition to add Astra Project Resources PLC

("Astra Resources"), Astra Project's corporate parent, as another respondent. For the reasons

that follow, GRANTS MidOil's petition to compel arbitration, but DENIES its motion to amend.

BACKGROUND

MidOil is a New Jersey corporation, with its principal place of business in New York.

(ECF No. 1, Petition ¶ 1.) Astra Project is an Australian corporation located in North Adelaide,

Australia. (Id.) In January 2012, the parties signed the CFA, which formed a U.S.-based holding

company for the purpose of "jointly participat[ing] in . . . investment banking programs for the . .

. benefit of the parties." (Id. Ex. A, CFA at 1; see Crandon Dec. ¶ 3.) MidOil agreed to arrange

banking and financing services for the newly formed company, and Astra Project agreed to

provide 100,000,000 shares of the unrestricted common stock of its corporate parent, Astra

Resources, valued at $300,000,000, to the new company to be used as collateral for the

programs. (Crandon Dec. ¶ 4.)  In the underlying contract dispute, MidOil alleges that Astra

Project breached the CFA by failing to transfer Astra Resources' shares to the new company,

causing MidOil to lose $25,000,000.  (Id. ¶ 11.)

 The CFA contains the following arbitration provision:

> "In the event of dispute [sic] concerning any aspect of this Agreement (including
> breach or alleged breach thereof) the PARTIES agree to have the dispute
> arbitrated and settled by binding arbitration in New York City under the most
> recent version of the Rules of the American Arbitration Association.  The loser of
> the arbitration shall be responsible for all costs of the arbitration."

(Id. at § 23.01.)  MidOil demanded that Astra Project arbitrate, but Astra Project refused.[1]  The

parties filed cross-motions to compel and stay arbitration.  Astra Project argues that (1) petitioner

failed to comply with the service requirements of the Hague Convention on the Service Abroad

of Judicial and Extrajudicial Documents (the "Hague Convention"), and (2) the arbitration

provision is void because its execution was induced by fraud.  (ECF No. 13, R. Mot. at 1, 2.)[2]

Both contentions lack merit.

---

[1] On August 13, 2012, Astra Project filed an action in the Superior Court of New Jersey, asserting breach of
contract, defamation, embezzlement, fraud, and other causes of action related to the transaction.  That action is still
pending.  On August 23, 2012, MidOil submitted a petition in the District Court for the District of New Jersey to
compel Astra Project to arbitrate its breach of contract claim.  On October 24, 2012, Judge Jose L. Linares adopted
Magistrate Judge Michael A. Hammer's report and recommendation dated October 5, 2012, dismissing MidOil's
motion, finding that it lacked the authority in New Jersey to compel arbitration in New York.  Subsequently on
November 20, 2012, MidOil re-filed its petition to compel arbitration in this district.

[2] Astra Project also urges the Court to dismiss MidOil's petition because "Petitioner bases its jurisdictional
allegations . . . on fraud on this tribunal." (Moza Aff. ¶ 14.)  According to Astra Project, MidOil's principal place of
business is actually in Mahwah, New Jersey, not New York.  (Id. ¶¶ 12-13; Stoll Aff.; Morris Aff.)  To the extent
that Astra Project challenges the Court's personal jurisdiction, its argument is meritless because, as discussed infra,
the parties' forum selection clause providing for arbitration in New York constitutes consent to personal jurisdiction.
To the extent that Astra Project disputes subject matter jurisdiction, ECF No. 32-3, R. Mem. in Supp. Cross Mot. ¶
7, the case comes under the Court's diversity jurisdiction by virtue of the Respondent's Australian citizenship in this
dispute with a "citizen[ ] of a State," regardless of whether that state is New York or New Jersey.  28 U.S.C. §
1332(a)(2).  The Court also has federal question jurisdiction over this action because the arbitration agreement falls
under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.  9 U.S.C. § 203 ("An action
or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United
States.").  New York is the correct venue not because MidOil alleges that its principal place of business is here, but

## DISCUSSION

### I.  MidOil's Motion to Compel Arbitration

a.  Hague Convention

Astra Project argues that MidOil's failure to effectuate service pursuant to the Hague

Convention amounts to a defect in personal jurisdiction.  (ECF No. 13, R. Mem. in Supp. Cross

Mot. ¶¶ 1-7.)  By agreeing to arbitrate in New York, however, the parties consent to the personal

jurisdiction of the court that can compel the proceeding in New York.  Victory Transp. Inc. v.

Comisaria General de Abastecimientos y Transportes, 336 F.2d 354, 363 (2d Cir. 1964).  The

claimed defects in service, therefore, are inapposite since the Court has jurisdiction over Astra

Project based on the forum-selection clause in the arbitration agreement.  While Astra Project

contends that it is a foreign corporation with no minimum contacts with New York, the

traditional minimum contacts analysis is unnecessary because the forum selection clause

constitutes consent to jurisdiction.  See Atl. Mut. Ins. Co. v. M/V HUMACO, 169 F. Supp.2d

211, 214-15 (S.D.N.Y. 2001).

Dismissal on non-jurisdictional grounds is likewise unwarranted.  When a party has

consented to personal jurisdiction by agreeing to arbitrate in the forum, "the sole function of

process . . . [is] to notify the [respondent] that proceedings had commenced."  Victory Transp.,

Inc., 336 F.2d at 364.  There is no doubt that Astra Project received actual notice of MidOil's

petition to compel arbitration: MidOil sent a copy of the petition to Astra Project's counsel in

Mineola, New York by regular and certified mail with return receipt requested.  (Pontikes Dec.

Exs. A, B.)  Astra Project does not contend that it lacked actual notice, nor can it, as Astra

---

because "[a] party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction."  Doctor's Assocs., Inc.v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996).

Project appeared in the action, petitioned to stay arbitration and a submitted a supporting affidavit from its director.  (ECF Nos. 6, 14.)  Courts have refused to dismiss actions when faced with similar objections to service.  E.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos, 553 F.2d 842, 845 (2d Cir. 1977) (finding acceptable service of motion to stay action pending arbitration when served on Greek respondent's attorneys in New York).  In this case, service was proper.[3]

### b. Fraudulent Inducement

"Whether a particular dispute is subject to arbitration turns on '(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Buchman v. Weiss, 2009 U.S. Dist. LEXIS 61024, at *8 (S.D.N.Y. July 14, 2009) (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir. 1996)).  Taking the questions in reverse order, Astra Project does not dispute that the breach of contract claim is a proper subject of the arbitration clause.  Indeed, the arbitration provision is a broad one that submits to the arbitrators all disputes involving "any aspect of this Agreement (including breach or alleged breach thereof)."  Accordingly, the Court finds that the petitioner's claim and the respondents' fraud related defenses fall within the scope of the provision.

---

[3] Federal Rule of Civil Procedure 4(f), which applies to service upon individuals in a foreign country, permits service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those means authorized by the Hague Convention . . . ."  Fed. R. Civ. P. 4(f)(1).  The Convention enumerates several alternative methods of service, including: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the State.  The Second Circuit has noted however, that failure to strictly adhere to the methods stipulated by the Convention "is not automatically fatal to effective service," and has explained that the Convention "should be read together with [Federal Rule of Civil Procedure] Rule 4, which 'stresses actual notice, rather than strict formalism.'"  Burda Media, Inc. v. Viertel, 417 F.3d 292, 301 (2d Cir. 2005) (quotation omitted) (emphasis in original).

Astra Project's main challenge is that the arbitration clause is void ab initio because "petitioners used fraud, deceit and misrepresentation to fraudulently induce the Respondents to execute and/or accept the arbitration provision 23.1 . . . ." (ECF No. 13, Mem. in Supp. Cross Mot. ¶ 13.) While courts may adjudicate claims of fraudulent inducement that are directed towards the arbitration provision in particular—"an issue which goes to the 'making' of the agreement to arbitrate"—the language of the Federal Arbitration Act precludes courts from considering "claims of fraud in the inducement of the contract generally." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967);[4] see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 550, 445-46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). The Second Circuit requires a "substantial relationship between the fraud or misrepresentation and the arbitration clause in particular." Campaniello Imports, Ltd. v. Saporiti Italia S.p.A, 117 F.3d 665, 667. "This 'substantial relationship' . . . requires more than a mere claim that the 'arbitration clause is an element of the scheme to defraud'; it must include 'particularized facts specific to the arbitration clause [ . . . ] which indicate how it was used to effect the scheme to defraud.'" Garten v. Kurth, 265 F.3d 136, 143 (2d Cir. 2001) (quoting Campaniello, 117 F.3d at 667)).

Astra Project's attempts to connect the fraud to the arbitration provision consist of a wholly conclusory allegation, devoid of any specific facts, that the "fraudulently induced [Astra Project] to enter the arbitration provision § 23.1 of the CFA . . . ." (ECF No. 14, Moza Aff. ¶ 2.) Upon review of its factual assertions, however, none of the instances of purported fraud are in

---

[4] The fact that Astra Project so heavily relies on Justice Black's dissent in Prima Paint shows how out of touch Astra's argument is on the law.

fact specific to the arbitration provision.  For example, Astra Project claims that it relied on petitioner's false representations that "Crandon[,] . . . his wife Christine and family owned an existing oil trading platform based in Rotterdam," were "highly experienced in world-wide mining excavation . . . [and were] qualified, . . . licensed and possess[ed] the infrastructure, financial solvency and experience [to] administer[ ]corporate financing programs of the type set out in the agreement."  (Id. ¶¶ 6, 8.)  Astra Project further alleges that the petitioner made "misrepresentation[s] regarding [its] ability and intention to perform the CFA," in that MidOil executed the CFA in bad faith as part of a scheme to defraud Astra Project of the shares of its affiliate's stock and embezzle Astra Project's funds.  (ECF No. 13, Mem. in Supp. Cross Mot. ¶¶ 10, 12; ECF No. 8, Biwas Aff. ¶¶ 18, 27, 28; Moza Aff. ¶ 21.)  Because these allegations do not show that the respondent was fraudulently induced into entering into the arbitration agreement in particular, the dispute between the parties should be submitted to arbitration, as set out in the arbitration clause.[5]

MidOil has requested a stay of all proceedings pending arbitration, including the action in New Jersey Superior Court.  (ECF No. 1 at 4.)  The FAA provides that where a court finds that issues are "referable to arbitration," the court shall "stay the trial of the action until such arbitration has been had."  9 U.S.C. § 3.  Since the parties' contract and fraudulent inducement

---

[5] Astra Project's analogy to Moseley v. Electronic & Missile Facilities, Inc. et al., 374 U.S. 167 (1963) is unavailing. See Campaniello Imports, Ltd., 117 F.3d at 666-67 (reconciling Moseley and Prima Paint by interpreting Moseley narrowly to require a nexus beyond the general allegation that the "arbitration clause was part and parcel of a fraudulent scheme"); see also Garten, 265 F.3d at 143 (finding the relationship between the fraud and the arbitration clause to be insufficiently substantial where a party made threats regarding its perceived advantages in arbitration to exact payment under a contract).  The fraud described here has nothing whatsoever to do with arbitration, and is therefore without doubt more attenuated than that held to be insufficiently related to the arbitration clause in both Campaniello and Garten. Astra's real argument is that it was fraudulently induced into the contract generally.  Prima Paint refers this dispute to an arbitrator, not the courts.

claims are arbitrable, the Court stays the instant action and directs the parties to proceed to arbitration.

The Court declines to stay the New Jersey action.  MidOil has not cited, nor is the Court aware, of any authority that permits it to stay a state court action in another jurisdiction.

## II.     MidOil's Motion to Amend the Complaint

MidOil moves to amend its petition to name Astra Resources, Astra Project's parent, even though Astra Resources is neither a party nor signatory to the CFA.  MidOil does so under two theories: first, it alleges that the terms of the CFA bind Astra Resources and second, Astra Resources is the alter ego of Astra Project.  (ECF No. 18, P. Mem. at 1.)  Federal Rule of Civil Procedure 15(a) provides that leave to amend should be "freely give[n]," but a court may deny a motion when the proposed claim would be futile.  Jones v. New York State Div. of Military & Naval Affairs, 166 F.3d 45, 50 (2d Cir. 1998).  The Second Circuit has recognized several different theories under which a non-signatory to an arbitration agreement may be compelled to participate in arbitration: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. See Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995).

### a.  Incorporation by Reference

MidOil argues that "Astra Resources is incorporated by reference into the CFA by Item 13.01 of that agreement," which provides that the "terms and conditions as outlined in this Agreement . . . . shall include and bind any and all those involved by or on behalf of the PARTIES and their associates and/or affiliated companies."  (P. Mem. at 6; ECF No. 1, Ex. A.) Since Astra Resources is one such "affiliate," MidOil reasons that the arbitration clause binds it as well.  Significantly, however, it does not allege that Astra Resources and MidOil share any

7

contractual relationship.  Astra Resources did not execute a separate agreement that incorporated

or assumed any of the obligations of the CFA.  See Thomson-CSF, S.A., 64 F.3d at 777 (finding

that non-signatory affiliate could not be bound under an incorporation theory where it did not

adopt any document that incorporated the arbitration clause); In re Inter County Glass, Inc., 2007

U.S. Dist. LEXIS 74680, at *15 (E.D.N.Y. September 28, 2007) ("Parties are plainly free to

incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other

agreements to which they are not a party.") (quoting Ronan Assocs. v. Local 94-94A-94B, Int'l

Union of Operating Eng'rs, 24 F.3d 447, 449 (2d Cir. 1994)); see also Smith/Enron Cogeneration

Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 97 (2d Cir. 1999) ("[A] court

should be wary of imposing a contractual obligation to arbitrate on a non-contracting party . . .

.").  As Astra Resources never expressed its consent to be bound by the CFA, the Court will not

compel it to arbitrate.

   b.  Piercing the Corporate Veil/Alter Eco

"[T]o pierce the corporate veil under New York law, a plaintiff must prove that '(1) [the

owner] has exercised such control that the [corporation] has become a mere instrumentality of

the [owner], which is the real actor; (2) such control has been used to commit a fraud or other

wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff.'"  Freeman v.

Complex Computing Co., 119 F.3d 1044, 1052 (2d Cir. 1997).[6]

---

[6] Courts typically apply the law of the state of incorporation to veil piercing claims.  DirecTV Latin Am., LLC v. Park 610, LLC, 2009 U.S. Dist. LEXIS 110295, at *65 n.5 (S.D.N.Y. November 27, 2009) (citing Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).  The parties do not dispute that Astra Project is incorporated in Australia. (ECF No. 18, P. Mot. at 7 n.2.)  "However, where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry."  Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997).  MidOil relies almost exclusively on New York veil-piercing law.  While MidOil does cite an Australian case, it contends that its application would result in the same conclusion under New York law.  Accordingly, the Court applies New York law to this case.

The determination of whether a parent completely dominated a subsidiary is a fact-intensive inquiry, and courts consider a number of factors such as:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

Id. at 1053.

MidOil fails to address many of the factors to be considered.  There are no allegations that Astra Project was undercapitalized; ceased to continue existing as a separate entity; failed to observe corporate formalities by, for example, failing to keep books and records or hold board meetings; that Astra Project lacked business discretion; that Astra Resources paid or guaranteed its debts; or that the entities intermingled corporate property.  MidOil's conclusory assertion that Astra Project was created solely for the purpose of the specified transaction is not accompanied by any citation to the record, and will not be considered.  The overlap of an unspecified number of directors and shared office space, Crandon Dec. ¶ 16, are not dispositive.  See Thomson-CSF, 64 F.3d at 778 (affirming district court's decision that a parent's "incorporat[ion of the subsidiary] into its own organizational and decision-making structure" did not amount to an "abandonment of the corporate structure.").  In light of the utter lack of indicia regarding many of the relevant factors, the Court does not consider the purported involvement of Astra Resources

in the transaction sufficient to rise to the level of complete domination.[7] MidOil must arbitrate with the party which was a signatory to the agreement—Astra Project.

**CONCLUSION**

For the foregoing reasons, MidOil's motion to compel arbitration is GRANTED, and its motion to amend the petition is DENIED. Astra Project's petition to stay arbitration and compel judicial review is DENIED. The Clerk of Court is directed to terminate the motions at 6, 17, and 26.[8]

Dated: New York, New York
   August _K_, 2013

                                    SO ORDERED

                                    _Paul N Catty_

                                    PAUL A. CROTTY
                                    United States District Judge

---

[7] In particular, MidOil argues that it was Astra Resources that circumvented the CFA by forming a separate oil trading partnership with Cranendonk, made payments under the CFA, communicated electronically about the transaction, and issued all press releases about the transaction. (ECF No. 18, P. Mem. at 3; Crandon Dec. ¶ 16.)

[8] On July 1, 2013, Astra filed a "notice of emergency motion to stay arbitration and compel judicial review," after MidOil filed a statement of claim with the International Centre for Dispute Resolution on May 30, 2013 against Astra Project and Astra Resources. (ECF No. 26.) The basis of Astra's "emergency" motion appears to be that MidOil prematurely sought arbitration prior to the Court's order compelling arbitration. (Id. ¶¶ 14, 20, 27, 34.) The arguments in support thereof are the same as those asserted in Astra's motion to stay arbitration at docket number 6, and the duplicative motion is denied for the same reasons.