UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
MIDOIL USA LLC,                                            :
                                                       Petitioner,    :  Case No. 12-cv-8484 (PAC)

     -against-                                                    :

ASTRA PROJECT FINANCE PTY LTD.,         :

                                             Respondent.     :
------------------------------------------------------------------ X

## PETITIONER MIDOIL USA LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR RECONSIDERATION AND/OR REARGUMENT

MORGAN, LEWIS & BOCKIUS LLP
John Dellaportas
Ariel F. Gursky
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

DUANE MORRIS LLP
Rachael G. Pontikes
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone: (773) 677-6757
Facsimile: (312) 277-6903

*Attorneys for Petitioner*
*MidOil USA LLC*

Petitioner MidOil USA LLC ("MidOil") respectfully submits this reply in further support of its motion, pursuant to Local Civil Rule 6.3, for reconsideration and/or reargument of that portion of the Court's August 15, 2013 Opinion (Dkt. 41) denying MidOil's motion to amend its petition to compel arbitration (the "Motion" or "Mot.").[1]

## PRELIMINARY STATEMENT

By this Motion, MidOil seeks either: (a) for the Court to reconsider that portion of the August 15 Order which denied MidOil's motion to amend its petition to compel arbitration and, upon such reconsideration, grant MidOil leave to amend; or (b) for the Court to clarify that, under its August 15 Order, the arbitral panel may determine its own jurisdiction over Astra Resources, subject to this Court's *de novo* review at confirmation.

In Respondent Astra Project's Memorandum of Law in Support of Its Reply in Opposition and Cross Motion to Dismiss Petitioner's Motion for Reconsideration (the "Opposition" or "Opp."),[2] Respondent advocates for the approach in *Limonium Maritime, S.A. v. Mizushima Marinera, S.A.,* Nos. 99-7219(L), 99-7249(XAP), 1999 WL 1070070 (2d Cir. Nov. 18, 1999) – deferring alter ego questions until the factual record is developed in discovery – over the one adopted by the Second Circuit in *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519 (2d Cir. 1980) – compelling the District Court to hold an evidentiary hearing on arbitrability over the non-signatory.

MidOil is fine with either approach. MidOil is confident that, when it is afforded the opportunity, either in arbitration or in litigation, to develop the factual record, it will be able to establish that Astra Resources is bound to arbitrate this dispute. As the August 15 Order affords MidOil no such opportunity, however, reconsideration is warranted.

---

[1] Defined terms and abbreviations shall have the same meaning as in the Motion for Reconsideration and/or Reargument.

[2] Although titled a "Cross-Motion", Respondent's submission appears to be more in keeping with an Opposition Brief, and accordingly it is treated as such for purposes of this Reply Brief. As no notice of Cross-Motion was filed, MidOil will not be submitting an opposition to the purported Cross-Motion unless and until instructed to do so by the Court.

**ARGUMENT**

I. **MidOil Should Be Permitted To Pursue Its Jurisdictional Claims in Arbitration**

In its Opposition, Respondent relies principally on the Second Circuit's decision in *Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, Nos. 99-7219(L), 99-7249(XAP), 1999 WL 1070070 (2d Cir. Nov. 18, 1999) (hereinafter, *Limonium II*), for its argument that "the Court did not err in denying Petitioner leave to amend as futile." Opp. at 7. In that case, however, neither the District Court nor the Second Circuit denied a motion for leave to amend and, in fact, both courts left open the possibility of non-signatory affiliate liability. In *Limonium*, plaintiff Limonium Maritime, sought to compel over one hundred non-signatory affiliates to arbitration under the alter ego theory of liability. *Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, No. 96 CIV. 1888 DC, 1999 WL 46721, at *1 (S.D.N.Y. Feb 1, 1999), *aff'd,* 201 F.3d 431, 1999 WL 1070070 (2d Cir. Nov. 18, 1999) (hereinafter, *Limonium I*). The district court declined to hold a hearing on the issue of whether the non-signatories could be compelled to arbitrate, choosing instead to defer that decision until after the parties participated in the arbitration.

Of note, the District Court did not say that to hold such a hearing prior to the arbitration would be incorrect, and unlike the August 15 Order, it did not summarily dispose of the claim in advance of discovery and an evidentiary hearing. Rather, the District Court simply chose to defer considering the issue in the interest of "judicial economy." *Limonium II*, 1999 WL 1010070, at *1. Specifically, the District Court stated:

> There is simply no reason to reach these complex issues now. It makes no sense to litigate the alter-ego liability of 117 defendants at this time. Limonium should proceed to arbitration with [the signatory] and the [guarantor] first. If (1) Limonium fails to prevail in the arbitration against [the signatory], or (2) Limonium prevails in the arbitration but [the signatory] pays the award, or (3) Limonium prevails in the arbitration and the [guarantor] pays the award, there would be no need to reach the question of the alter-ego liability of the other 117 defendants. It would be a waste of the resources of the parties and the Court to litigate the complex issues that would be involved before resolving the questions of [the signatory's] and the [guarantor's] liability first. . . . [the Court] will conduct a hearing on the alter-ego liability . . . if and

> when that becomes necessary, after the completion of the arbitration proceedings between Limonium and [the signatory] and the [guarantor].

*Limonium I*, 1999 WL 46721, at *9.

On appeal, the Second Circuit affirmed. *Limonium II,* 1999 WL 1070070, at *1-2. While Respondent now suggests that the Court of Appeals' decision in *Limonium* was somehow inconsistent with its earlier decision in *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519 (2d Cir. 1980), in fact the two decisions are fully consistent, and indeed the Second Circuit explains how they are consistent in *Limonium II*.

> Under the Federal Arbitration Act, district courts must compel arbitration unless "the 'making' of an arbitration agreement . . . is in question." *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1063 (2d Cir. 1993) (quoting *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 522 (2d Cir. 1980)). "[W]hether a person is a party to [an] arbitration agreement . . . is included within the statutory issue of 'the making of the arbitration agreement,'" *Tehran-Berkeley Civil and Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton,* 816 F.2d 864, 868 (2d Cir. 1987) (quoting *Interocean Shipping Co. v. National Shipping & Trading Corp.,* 462 F.2d 673, 677 (2d Cir. 1972)), and "a nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency,'" *Thomson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995) (quoting *McAllister Bros.,* 621 F.2d at 524).
>
> In *Tehran-Berkeley* and *McAlister Bros.,* we reversed district court dismissals of petitions to compel arbitration for nonsignatory parties without holding an evidentiary hearing. *See Tehran-Berkeley,* 816 F.2d at 868; *McAllister Bros.,* 621 F.2d at 524. However, in each of those cases, the district court summarily determined that the nonsignatories were not parties to the agreements in question. *See Tehran-Berkeley,* 816 F.2d at 867; *McAllister Bros.,* 621 F.2d at 521. We see nothing in the Act that forbids the order of proceedings selected by the district court.
>
> Nor do we see any abuse of discretion by that court. The district court deferred consideration of whether the nonsignatories were parties until after the arbitration was completed for the charter agreement's signatories and guarantor, for sound reasons of judicial economy. *See* 1999 WL 46721, at *9 . . . .

*Limonium II,* 1999 WL 1070070, at *1.

In other words, the District Courts may order the proceedings however they deem most appropriate. The only thing the District Courts may not do is what the August 15 Order did – "summarily determined that the nonsignatories were not parties to the agreements in

3

question." *Id*. As the Second Circuit made clear both in *McAllister Bros.* and in *Limonium II*, that approach denies the petitioner its day in Court and is prohibited.[3]

In sum, the controlling law in the Second Circuit is that issues of arbitral jurisdiction over non-signatories may be determined through various procedural options, including both prior to or after the arbitration and the relevant discovery occurs. In *McAllister Bros.*, the Second Circuit approved of the parties' election to pursue alter ego liability and jurisdiction over the non-signatories in the discovery portion of the arbitration:

> While we conclude that the district court erred in not holding a trial on the issue whether [the non-signatories] were bound by the contract, we recognize the need for flexibility if fairly complex arbitration cases such as this are to be handled expeditiously. <u>At oral argument, there was discussion of a possible procedure under which, by stipulation, a final determination of whether [the non-signatories] are bound by the arbitration would be stayed pending arbitration of McAllister's claims against all four companies, with [the non-signatories] participating fully in the arbitration. Then, if McAllister prevails in its claims against [the non-signatories] and if [the signatories] are unwilling or unable to satisfy the arbitral award against [the non-signatories], a hearing can be held to determine whether the latter two entities were parties to the arbitration agreement and thus bound by the arbitrator's decision.</u>

*McAllister Bros.,* 621 F.2d at 524 (emphasis added). That is essentially what happened in *Limonium*. As Respondent now adopts *Limonium* as the correct approach, the parties in this case, like the ones in *McAllister Bros.*, appear to have an agreement on how to proceed. Accordingly, if the Court does not wish to oversee discovery and an evidentiary hearing on agency and alter ego issues, then the parties should be instructed to take that issue to the arbitral panel.

## II.   **MidOil Is Entitled To Take Discovery Because Of The Evidence Of A Factual Dispute Between the Parties**

Respondent's Opposition gives yet further cause for MidOil to be permitted discovery in at least one forum. Notably, Respondent's counsel proffers factual representations as to the supposed "falsity" of MidOil's positions (each of which was supported by a sworn

---

[3] Respondent also incorrectly states that "none of the cases cited by MidOil is a New York, or Second Circuit case." Opp. at 16. As noted above, the case appearing in the next sentence of the Opposition, *McAllister Bros.*, is a case cited by MidOil and from the Second Circuit. Mot. at 5-6.

statement by a knowledgeable fact witness).  Indeed, Respondent's counsel goes so far as to certify the correctness of his factual allegations, even though he is not a fact witness: "I, Meir Moza, am an attorney duly admitted to practice law before the Courts of the State of new Jersey and New York.  I hereby affirm the following true, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe to be true."  Opp. at 5.  Not only is this improper on its face, *see* N.Y. Prof. Conduct Rule 3.4(d)(2),(3) ("A lawyer shall not . . . in appearing before a tribunal on behalf of a client . . . assert personal knowledge of fact in issue except when testifying as a witness . . .  [or] assert a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused . . . ."), but it also demonstrates that MidOil's agency and alter ego allegations present material fact issues which need to be properly vetted through discovery and then an evidentiary hearing in the appropriate forum.

      In light of these disputed fact issues, MidOil respectfully submits that the August 15 Order's summary denial of MidOil's motion to amend its petition was contrary to governing law and should be reconsidered.  *See, e.g., Stolt-Neilsen Transp. Grp. BV v. Edible Oil Trading Corp.*, No. 06 Civ. 0703(NRB), 2007 WL 194182, at *5 (S.D.N.Y. Jan. 24, 2007) ("Because there are disputed issues of fact as to whether [the non-signatory] can properly be considered an alter ego of [the signatory] and thus bound by the arbitration agreement, it would be premature to confirm [petitioner's] petition as against [the non-signatory] on that ground.  It is apparent, however, that a more complete factual development might eliminate some of the disputed issues as to [the non-signatory's] potential alter ego status. We therefore grant petitioner's request to conduct additional discovery as to the relationship between [the non-signatory] and [the signatory] and as to [the signatory's] actual involvement in the charter agreement.  If disputed issues of fact persist upon the conclusion of this discovery, we shall conduct an evidentiary hearing as required by the FAA." (citations omitted)).

**III.     The ICDR Is The Proper Venue For This Arbitration**

Finally, Respondent's Opposition alleges that the International Centre for Dispute Resolution ("ICDR") is an improper venue for this proceeding, stating that the "CFA's arbitration clause Item 23.01 does not name the ICDR as the proper arbitration venue in this case." Opp. at 27-28.  Item 23.01 of the CFA reads as follows:

> In the event of dispute concerning any aspect of this Agreement (including breach or alleged breach thereof) the **PARTIES** agree to have the dispute arbitrated and settled by binding arbitration in New York City under the most recent version of the Rules of the American Arbitration Association.  The loser of the arbitration shall be responsible for all costs of the arbitration.

The ICDR "is the international division of the American Arbitration Association (AAA) charged with the exclusive administration of all of the AAA's international matters." *American Arbitration Association, International Dispute Resolution Procedures (Including Mediation and Arbitration Rules)*, Introduction, *available at* http://www.icdr.org/icdr/ (last visited October 24, 2013).   Specifically, "[w]here parties have agreed in writing to arbitrate . . . an international dispute by the International Centre for Dispute Resolution or the American Arbitration Association without designating particular Rules, the arbitration shall take place in accordance with [the ICDR's] Rules . . . ." *Id.* at Art. 1.[4]  Accordingly, contrary to Respondent's assertion, the ICDR is the proper venue for arbitration in this case and is *specifically* contemplated by Item 23.01 of the CFA.

Respondent notes that, despite the Court's ruling compelling Astra Project to arbitrate, Astra Project has thus far refused to participate in the proceedings.  In a letter transmitted to Petitioner via the ICDR Case Manager, Astra Project stated:

> In addition, Astra Project Pty Ltd., [sic] adamantly refuses to to [sic] proceed with the arbitration in ICDR and do not wish to participate in said proceedings due to, among other reasons, their position that said arbitrators are biased in favor of Mid Oil, and do [sic] not uphold the proceedings in a fair and equitable manner.

---

[4] As ICDR jurisdiction is proper, Petitioner need not address Respondent's request to refer this arbitration to FINRA, a venue with no basis for jurisdiction.  Opp. at 27-28.

Reply Declaration of Ariel F. Gursky, Exh. 1; *see id.* at Exh. 2.  Notably, the arbitrators whom Astra Project, through the same counsel as in the matter before this Court, has accused of being "biased" have yet to hold a hearing or render a ruling in this matter.

## CONCLUSION

For the foregoing reasons, Petitioner MidOil USA LLC respectfully requests that the Court grant Petitioner leave to amend its petition to compel arbitration or, in the alternative, to clarify that its August 15 Order does not limit MidOil's right to seek to compel jurisdiction against Astra Resources as part of the ongoing arbitration

Dated:   New York, NY
        October 24, 2013

MORGAN, LEWIS & BOCKIUS LLP

By:   s/ John Dellaportas
     John Dellaportas
     Ariel F. Gursky
     101 Park Avenue
     New York, New York 10178
     Telephone: (212) 309-6000
     jdellaportas@morganlewis.com
     agursky@morganlewis.com

Rachael G. Pontikes
Duane Morris, LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone: (773) 677-6757
rgpontikes@duanemorris.com

*Attorney for Petitioner*
*MidOil USA LLC*